UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAY BROOKS (DOC # 568449)** | : | **CIVIL ACTION** |
| | : | **NO. 19-846-SDD-RLB** |
| **VERSUS** | | |
| | : | **JUDGE SHELLEY D. DICK** |
| **DARREL VANNOY, ET AL.** | : | **MAGISTRATE JUDGE** |
| | | **RICHARD L. BOURGEOIS, JR** |

*************************************************************************

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Defendants, Warden Darrel Vannoy ("Warden Vannoy"), Lt. Charles Gooden, Jr. ("Lt. Gooden") and Captain Thomas Sterling ("Captain Sterling") (collectively, "Defendants"), respectfully move this Honorable Court for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure because Defendants are entitled to qualified immunity and Plaintiff cannot support his claims of excessive force pursuant to federal law. As such, this Honorable Court should grant Defendants' motion and dismiss Plaintiff's claims with prejudice as a matter of law.

**I.     <u>STATEMENT OF THE CASE</u>**

**A.     Factual Background.**

Plaintiff, Ray Brooks (DOC#568449) (hereinafter, "Plaintiff" or "Offender Brooks"), filed suit in this case on December 9, 2019 under 42 U.S.C. § 1983 against Defendants.[1] Plaintiff is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections and

---

[1] R.Doc. 1.

at all times relevant to this suit, was housed at Louisiana State Penitentiary at Angola, Louisiana ("LSP").[2] Plaintiff transferred to LSP from Elayn Hunt Correctional Center on April 1, 2019.[3] Approximately two (2) months later, on June 27, 2019, the subject incident took place on Cell Block "A" ("CBA").[4]

On June 27, 2019, Captain Sterling was assigned to the Main Prison West Yard where CBA is located and on which he would make rounds on the tier.[5] At approximately 2:00 p.m., Captain Sterling was notified of a beeper activation by the Control Center and upon his arrival to Plaintiff's cell, CBA Lower/Left #9, Cadet James Cook informed Captain Sterling that Offender Brooks was possibly intoxicated.[6] Upon Captain Sterling's arrival to Plaintiff's cell, the cell door was already open and Offender Brooks was standing near the front of his cell covered in vomit, his eyes were red and glassy, and appeared to be intoxicated based on his experience.[7]

Plaintiff refused Captain Sterling's direct order to put his hands behind his back and submit to being restrained.[8] Upon Captain Sterling entering the cell to attempt to restrain him, Offender Brooks became aggressive and pulled away from Captain Sterling, after which Captain Sterling used only the force necessary to regain control of the situation by taking Plaintiff to the ground per the applicable Use of Force Policy.[9] Once on the ground, Plaintiff continued to be combative and resist being restrained by Captain Sterling.[10]

---

[2] *Id.*; **Exhibit 1**: Ray Brooks Inmate Location Sheet; *See also*, R.Doc. 12.1 Affidavit, at p. 4 "transfer date".
[33] **Exhibit 1**: Ray Brooks Inmate Location Sheet; *See also*, R.Doc. 12.1 Affidavit, at p. 4 "transfer date".
[4] R.Doc. 1, at p. 4.
[5] **Exhibit 2**: Affidavit of Captain Thomas Sterling ("Sterling Affidavit"), ¶¶1-3.
[6] **Exhibit 2**: Sterling Affidavit, ¶¶4 & 6.
[7] **Exhibit 2**: Sterling Affidavit, ¶7 & 8.
[8] **Exhibit 2**: Sterling Affidavit, ¶9.
[9] **Exhibit 2**: Sterling Affidavit, ¶¶10-12; **Exhibit 3**: Louisiana State Penitentiary Directive No.: 09.002 – Use of Force ("Use of Force Policy"), at p. 3 "Force Continuum", p. 4 "Necessary Force" and "Reasonable Force", pp. 5 – 6 at section A(3)(b)(2), (3), and (6).
[10] **Exhibit 2**: Sterling Affidavit, ¶¶13 & 14.

Around this time, Lt. Gooden, whom was also assigned to the Main Prison West yard where CBA is located, was notified by Control Center via radio of a beeper activation on Cell Block "A" Lower/Left #9, and upon arrival, Cadet James Cook informed Lt. Gooden that Captain Sterling went to Offender Brooks' cell in response to possible intoxication.[11] Lt. Gooden observed Plaintiff and Captain Sterling on the ground in Plaintiff's cell and Plaintiff was actively resisting Captain Sterling, after which Lt. Gooden administered the minimum amount of chemical agent to Offender Brooks to gain control of the situation and prevent further assault on Captain Sterling.[12] After Lt. Gooden administered chemical agent once, Captain Sterling was able to restrain Plaintiff by putting handcuffs on him behind his back while still on the ground of Plaintiff's cell.[13] The beginning weight of the chemical agent was 138 grams and the ending weight was 132 grams.[14]

Once restrained and brought to his feet, Offender Brooks continued to resist Captain Sterling requiring additional assistance from Lt. Gooden to remove Plaintiff from his cell.[15] Once removed from his cell, Captain Sterling and Lt. Gooden began escorting Plaintiff out of Cell Block "A", however, during the walk, Offender Brooks continued to be combative with both Captain Sterling and Lt. Gooden.[16] Thereafter, Captain Sterling used only the force necessary to regain control of the situation by again taking Plaintiff to the ground per the applicable Use of Force Policy.[17]

---

[11] **Exhibit 4**: Unsworn Declaration of Charles Gooden, Jr. ("Gooden Declaration"), ¶¶1-5. Undersigned will submit a cleaner and clearer version of Lt. Gooden's signed Declaration in the near future as he currently lives outside the State of Louisiana and has limited access to electronic equipment.

[12] **Exhibit 2**: Sterling Affidavit, ¶¶15-16; **Exhibit 4**: Gooden Declaration, ¶¶6-8.

[13] **Exhibit 2**: Sterling Affidavit, ¶¶15-16; **Exhibit 4**: Gooden Declaration, ¶¶7-9.

[14] **Exhibit 4**: Gooden Declaration, ¶8.

[15] **Exhibit 2**: Sterling Affidavit, ¶17; **Exhibit 4**: Gooden Declaration, ¶10.

[16] **Exhibit 2**: Sterling Affidavit, ¶18; **Exhibit 4**: Gooden Declaration, ¶11.

[17] **Exhibit 2**: Sterling Affidavit, ¶¶19-20; **Exhibit 3**: Use of Force Policy, at p. 3 "Force Continuum", p. 4 "Necessary Force" and "Reasonable Force", pp. 5 – 6 at section A(3)(b)(2), (3), and (6); **Exhibit 4**: Gooden Declaration, ¶¶12-13.

Offender Brooks was transported to the Treatment Center for treatment and evaluation by medical personnel.[18] Plaintiff sustained an injury to the right side of his face from this incident[19] and left knee for which he received evaluation and treatment.[20] Both Captain Sterling and Lt. Gooden reported to Robert E. Barrow Treatment Center for evaluation and treatment after the incident with Offender Brooks, and both were cleared to return to their posts by medical personnel.[21] Captain Sterling and Lt. Gooden authored Warden's Unusual Occurrence Reports and Disciplinary Reports regarding this incident of Plaintiff's rule violations.[22]

On June 28, 2019, an Assignment of Medical Investigation was issued to the Medical Director by the Disciplinary Board Office ("Board"), wherein the Board requested a medical record investigation and was asked the following question:



✓  Above offender has exhibited signs of intoxication by expressing;  slurred speech, redness of eyes, odor of alcohol, elation, boisterous behavior, hysteria, being in a daze or trance, or an unsteady gate.

| YES | NO |
|-----|-----|
|     | ✓  |

Is there a medical reason or medications prescribed to this offender that may result in the offender's physical or mental state to exhibit signs of being intoxicated as would the influence of an intoxicating substance?

_____
Signature of Approved Medical Personnel

[23]

---

[18] **Exhibit 2**: Sterling Affidavit, ¶22; **Exhibit 4**: Gooden Declaration, ¶16.

[19] **Exhibit 5**: Medical Records of Ray Brooks ("Medical Records"), at p. 14.

[20] **Exhibit 5**: Medical Records, p. 14. As shown by the medical records and discussed further below, specific incident that caused the fractures to Plaintiff's facial bones is questionable.

[21] **Exhibit 2**: Sterling Affidavit, ¶¶23-24; **Exhibit 4**: Gooden Declaration, ¶¶17-18.

[22] **Exhibit 2**: Sterling Affidavit, ¶27; **Exhibit 4**: Gooden Declaration, ¶19; **Exhibit 6**: Administrative Remedy Procedure (ARP) No. LSP-2019-1454 (hereinafter, "ARP No. LSP-2019-1454"), pp. 10-14; **Exhibit 7**: Ray Brooks (DOC#568449) Disciplinary Reports regarding June 27, 2019 incident ("Disciplinary Reports"), pp. 4 & 6.

[23] **Exhibit 7**: Disciplinary Reports, Assignment of Medical Investigation, p. 5.

As shown above, the medical personnel conducting the investigation found no medical reason or medications Offender Brooks was prescribed that would have caused or resulted in him exhibiting signs of being intoxicated.[24]

On July 10, 2019, a hearing was held in front of the Disciplinary Board, wherein the Board combined the two Disciplinary Reports from this incident, and determined that Offender Brooks was guilty of rule violations of defiance, aggravated disobedience, and intoxication.[25] The Board imposed a sentence of quarters change to extended lockdown, 12 weeks loss of canteen, 12 weeks loss of phone privileges,[26] and suspension of visiting privileges from June 27, 2019 until October 8, 2019.[27] Plaintiff appealed these decisions, which appeal was denied by the Disciplinary Board.[28]

In his Complaint, Plaintiff asserts that he was having a seizure on the hallway of CBA (Cell Block "A") lower left tier and became aware he "was being beaten" by Lt. Gooden and Captain Sterling as he was regaining consciousness.[29] Yet, neither Captain Sterling nor Lt. Gooden have any knowledge of Plaintiff's medical history, symptoms, and/or diagnoses.[30] They are not aware of any treatment Plaintiff has sought or received during his incarceration, whether Plaintiff has ever received a diagnosis as a result of any such treatment, whether Plaintiff has ever been prescribed medication at any time, or whether Plaintiff ever received, accepted, or ingested any medications on the day of the subject incident, or at any time.[31]

In Captain Sterling's experience, offenders exhibiting signs of red and/or glassy eyes, vomiting, and slurred speech are indications of intoxication. In some instances, and depending on

---

[24] **Exhibit 7**: Disciplinary Reports, Assignment of Medical Investigation, p. 5.
[25] **Exhibit 7**: Disciplinary Reports, 2, 4 & 6.
[26] **Exhibit 7**: Disciplinary Reports, 2, 4 & 6.
[27] **Exhibit 7**: Disciplinary Reports, Memorandum at p. 3.
[28] **Exhibit 7**: Disciplinary Reports, Disciplinary Board Appeal Decision, p. 2.
[29] R.Doc. 1, at p. 4.
[30] **Exhibit 2**: Sterling Affidavit, ¶¶28-29; **Exhibit 4**: Gooden Declaration, ¶¶20-21.
[31] *Id.*

the substance ingested by an intoxicated offender, the strength of said offender is exponentially increased, creating a dangerous situation for officers and the offender.[32]

During the subject incident, no determination was made by Captain Sterling or Lt. Gooden concerning Plaintiff's medical history or diagnoses as Offender Brooks was non-compliant with requests to be restrained.[33] Additionally, neither defendant is a medical professional and has not, and cannot, diagnosis any individual, including Plaintiff.[34]

### B.    Procedural History.

Once Offender Brooks exhausted his administrative remedies per the applicable ARP Policy,[35] he filed suit on December 9, 2019 for monetary damages and injunctive and declaratory relief under 42 U.S.C. § 1983 against Defendants.[36] Plaintiff alleges Lt. Gooden and Captain Sterling, sued both in their official and individual capacities, used excessive force in violation of his Eight Amendment rights.[37] Plaintiff also names Warden Vannoy as defendant, *in his official capacity only*, because he "was aware, or should have been aware of the numerous grievances and suits filed by other Offenders pertinent to the use of excessive force when officers have responded to beeper activations, amounting to unconstitutional and illegal use of force, and he took no steps to abate the behavior."[38] Thus, Warden Vannoy is named in this suit due only to his position as (now former) Warden of LSP, however, the specific claim asserted against him is unclear.

---

[32] **Exhibit 2**: Sterling Affidavit, ¶8.
[33] *See* R.Doc. 44, Sterling Response to Interrogatory No. 6, p. 4; R.Doc. 44.1, Sterling Verification; R.Doc. 49, Gooden Response to Interrogatory No. 6, p.4; R.Doc. 49.1, Gooden Verification.
[34] *Id*.
[35] **Exhibit 6:** ARP No. LSP-2019-1454; **Exhibit 8**: LSP Directive No. 14.006 – Administrative Remedy Procedure.
[36] R.Doc. 1.
[37] R.Doc. 1, at p. 8.
[38] R.Doc. 1, at p. 6.

For the reasons more fully stated below, Defendants appear in this *Motion for Summary Judgment* moving this Honorable Court to issue a judgment dismissing all of Plaintiff's claims against them with prejudice.

## II.    LAW AND ARGUMENT

### A.  Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact and the moving party is entitled to judgment as a matter of law.[39] Supporting affidavits must set forth facts, which would be admissible in evidence, and opposing responses must set forth facts showing that there is a genuine issue for trial.[40] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can show a reasonably jury that it is entitled to a verdict in its favor.[41]

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[42]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.[43]

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his claim."[44] Conclusory statements, speculation, and unsubstantiated assertions are not competent summary

---

[39] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).
[40] *Anderson,* 477 U.S. at 248.
[41] *Id*.
[42] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[44] *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998).

judgment evidence and do not defeat a properly supported motion for summary judgment.[45] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in the favor of the non-moving party.[46] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[47]

## III.  LAW AND ARGUMENT

### A.  Defendants are Immune from Suit in their Official Capacities.

#### i.  *Monetary Damages are Barred.*

Plaintiff has asserted claims of excessive force against Captain Sterling and Lt. Gooden. As to Warden Vannoy, however, the specific claims against him are unclear. Taking the allegations in the Complaint in a light most favorable to Plaintiff, it appears he is asserting a claim of conspiracy against Warden Vannoy. Regardless of the specific claim(s) asserted, all three (3) Defendants are entitled to Eleventh Amendment immunity regarding the claims asserted against them in their official capacities.

The Supreme Court has interpreted the Eleventh Amendment to bar suits in federal court by private citizens against nonconsenting states.[48] The Louisiana Supreme Court has determined that the State of Louisiana has not waived or abrogated its sovereign immunity from federal entitlement legislation.[49] This immunity extends to protect state officers acting in their official

---

[45] *Id.*; *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

[46] *Little*, 37 F.3d at 1076.

[47] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1994), *cert. denied*, 502 U.S. 1059 (1992).

[48] *Bd. Of TRS. Of the Univ. of Ala. V. Garrett*, 531 U.s. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

[49] *Holliday v. Bd. of Supervisors of LSU*, 149 So.3d 227, 229 (La. 10/15/14) and *Reed-Salsberry v. State, DPSC*, 216 So.3d 226 (La. App. 2nd Cir. 2/15/17), writ denied 221 So.3d 81 (La. 5/26/17).

capacities, who, under the principle of state-sovereign immunity are generally barred from suit.[50]

Here, Plaintiff is seeking monetary damages, injunctive relief and declaratory relief under Section 1983. However, any claim for monetary damages are barred by the Eleventh Amendment and should be dismissed with prejudice as this Honorable Court lacks subject matter jurisdiction over such claims.

### ii. Ex parte Young *Exception Does Not Apply.*

Moreover, Plaintiff has failed to sufficiently assert a claim for prospective injunctive relief against Warden Vannoy for the *Ex parte Young* exception to Eleventh Amendment immunity to be applicable here.

In support of any such claims, Plaintiff provides the following allegations specifically as to Warden Vannoy. First, that Warden Vannoy "was aware, or should have been aware of the numerous grievances and suits filed by other Offenders pertinent to the use of excessive force when officers have responded to beeper activations, amounting to unconstitutional and illegal use of force, and he took no steps to abate the behavior."[51] Second, Warden Vannoy has failed to correct the behavior of corrections officers, EMTs' and others to "cover up the use of force" at LSP.[52] Plaintiff goes onto allege that Warden Vannoy "takes a hands off approach to the daily running of the institution[,]" but then states "Warden Vannoy is rarely seen allowing his under Warden to just go unsupervised who also not only allow their subordinates do [sic] the things they

---

[50] *Edleman v. Jordan,* 415 U.S. 651-69, 94 S.Ct. 1347, 39 L.ED.26 662 (1974); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (finding that "the principle of state-sovereign immunity generally precludes actions against state officers in their official capacities").
[51] R.Doc. 1, p. 6.
[52] R.Doc. 1, p. 9.

do but also cover each other in the wrongdoing. EMT's further this by failing to report the finding of excessive use of force."[53]

The Supreme Court has recognized an exception sovereign immunity under the *Ex Parte Young* doctrine whereby "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their *future conduct* to the requirements of federal law."[54] A court undertaking an *Ex Parte Young* analysis must conduct two inquiries to determine whether the exception applies to the state officer in question. First, the court must conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[55] Next, the court must "also decide whether the official in question has a "sufficient connection to the enforcement of the challenged act."[56] In cases in which a plaintiff invokes *Ex Parte Young*, the state official must have some authority to enforce the law or an order for injunctive relief.[57] "A probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statue at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute."[58]

For the sake of brevity, the second prong of this analysis is the most compelling in finding that this exception inapplicable. Warden Vannoy is no longer employed at LSP as he retired on September 6, 2021.[59] Consequently, Warden Vannoy does not have "sufficient connection to the

---

[53] Plaintiff fails to specifically name any Emergency Medical Technicians in his Complaint that were involved in an alleged "cover up" or corruption at LSP.
[54] *Bailey v. Board of Commissioners of Louisiana Stadium,* 441 F.Supp.3d 321, quoting *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (emphasis added).
[55] *Id.*
[56] *Bailey v. Board of Commissioners of Louisiana Stadium,* 441 F.Supp.3d 321, *quoting Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 522 L.ED. 714 (1098).
[57] *Okpalobi v. Foster,* 244 F.3d 405 (5th Cir. 2001); *Lytle v. Griffin,* 240 F.3d 402, 412 (4th Cir. 2001).
[58] *Bailey,* 441 F.Supp.3d at 321.
[59] **Exhibit 9**: Affidavit of Darrel Vannoy ("Vannoy Affidavit"), ¶1.

enforcement of the challenged act"[60] necessary to support Plaintiff's claims against him because he has zero authority to enforce the law or an order for injunctive relief at LSP.[61] Based on this fact alone, the claims against Warden Vannoy should be dismissed.

As to the first prong, Plaintiff has not sufficiently alleged an ongoing violation of federal law that is properly characterized as prospective. In essence, Plaintiff is asserting that Warden Vannoy should prevent any excessive or illegal use of force at LSP, or any "cover ups" concerning same. Beyond the fact that Warden Vannoy is no longer the warden at LSP, when he was, Warden Vannoy was responsible for the overall management and supervision of LSP.[62] However, specific responsibilities and duties were delegated to various officers in the administration of the institution facilities and their individual reports and findings are enumerated in relevant records.[63] Plaintiff's bare assertion that Warden Vannoy "should have known" of all the grievances and suits filed by offenders housed at LSP is neither reasonable nor plausible because responsibilities within LSP related to such grievances—such as the ARP process—were delegated to other officers.[64]

The First Step of the ARP process is initiated with a letter to Warden Vannoy's former office wherein an ARP Screening Officer facilitates the remedy process.[65] Thereafter, a staff member conducts an investigation into the facts such that a response to the grievance is delivered to the complaining offender by an individual from Warden Vannoy's former office.[66] Consequently, Warden Vannoy would not have had any knowledge of *every* grievance filed by an offender and has no knowledge of any staff member, EMT or corrections officer submitting false

---

[60] *Bailey v. Board of Commissioners of Louisiana Stadium,* 441 F.Supp.3d 321, *quoting Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 522 L.ED. 714 (1098).
[61] *Okpalobi v. Foster,* 244 F.3d 405 (5th Cir. 2001); *Lytle v. Griffin,* 240 F.3d 402, 412 (4th Cir. 2001).
[62] **Exhibit 9:** Vannoy Affidavit, ¶2.
[63] **Exhibit 9:** Vannoy Affidavit, ¶¶2-4.
[64] **Exhibit 8**: ARP Policy.
[65] **Exhibit 9**: Vannoy Affidavit, ¶8.
[66] **Exhibit 9**: Vannoy Affidavit, ¶9.

reports related to offender grievances concerning use of force.[67] Moreover, any staff member, EMT or corrections officer submitting a false report would be subject to disciplinary action.[68]

Plaintiff also seeks "an injunction to ensure proper protocols are put in place and followed in dealing with inmate/officer confrontations."[69] As to use of force training, all LSP security officers receive in the Use of Force Policy at the time they are hired and on an annual basis.[70] Thus, a policy was already in place before and at the time of the subject incident such that Plaintiff has not met his burden in sufficiently alleging a claim of prospective injunctive relief against Warden Vannoy. Consequently, any and all claims against Warden Vannoy in his official capacity should be dismissed with prejudice.

### B.  Claims Against Warden Vannoy Should be Dismissed.

To the extent that Eleventh Amendment immunity is not applicable as to Warden Vannoy (which is denied), any and all claims against him should be dismissed as Plaintiff has failed to sufficiently assert such claims in his Complaint and will be unable to present competent summary judgment evidence concerning same.

#### i.  *Supervisory Liability is Not Applicable as to Warden Vannoy.*

To the extent Plaintiff asserts Warden Vannoy is liable for the actions of his subordinates while he was warden of LSP, including Captain Sterling or Lt. Gooden, he cannot be held liable for such actions under a § 1983 claim.

It is a well-established point of law that a supervisory official cannot be held liable for the acts or omissions of their subordinates under §1983.[71] Indeed, "[E]ach government official, his or

---

[67] **Exhibit 9**: Vannoy Affidavit, ¶11.
[68] **Exhibit 9**: Vannoy Affidavit, ¶12.
[69] R.Doc. 1, p. 7.
[70] **Exhibit 3**: Use of Force Policy; **Exhibit 9**: Vannoy Affidavit, ¶7.
[71] *See Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005)(internal citations omitted).

her title notwithstanding, is only liable for his or her own misconduct."[72] A showing of merely negligent conduct by a supervisory official is insufficient to overcome the defense of qualified immunity.[73] Indeed, "Personal involvement is an essential element of a civil rights cause of action."[74]  Generally, in order for a supervisor to be held liable, a plaintiff must prove (1) his personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries.[75]

It is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*.[76]  To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed.[77] Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.[78]

In his Complaint, Plaintiff asserts, without any factual support, that "Defendant Vannoy has personal involvement sufficient for purposes of liability under 42 U.S.C. § 1983. Defendant,

---

[72] *Ashcroft v. Iqbal,* 556 U.S. at 677.
[73] *See Whitley* v. Hanna, 726 F.3d 631, 643 (5th Cir. 2013)("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.").
[74] *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).
[75] *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011)(citing *Gates v. Texas Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)).
[76] *Alton v. Texas A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
[77] *Lozano v. Smith,* 718 F.2d 756 (5th Cir. 1983).
[78] *Alton,* 168 F.3d at 200; *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc);*Coleman v. Houston Independent School District*, 113 F.3d 528, 534 (5th Cir. 1997): *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir.1994) (en banc); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 601 (5th Cir.1988); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir.1987), overruled on other grounds, *Walton v. Alexander*, 44 F.3d 1297, 1303 n. 4 (5th Cir.1995) (en banc); *Kline v. North Tex. State Univ.*, 782 F.2d 1229, 1235 (5th Cir.1986); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir.1985); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

Darrel Vannoy is sued in his official capacity for the purpose of declaratory and injunctive relief."[79] Plaintiff fails, however, to assert that Warden Vannoy was present on CBA during the subject incident. In fact, Warden Vannoy affirmatively states that he was "not present at Louisiana State Penitentiary, Cell Block "A" on June 27, 2019, and thus, has no personal involvement in or knowledge of the incident that is the subject of Offender Brooks' suit."[80]

Although Plaintiff claims Warden Vannoy has personal involvement, that blanket assertion is not sufficient to support a claim against him. The extent of his personal involvement alleged by Plaintiff is that Warden Vannoy took a "hands off approach to the daily running of the institution", but also did not allow his "under Wardens to just go unsupervised."[81] So it seems that in one instance, Plaintiff asserts Warden Vannoy was not involved enough, while in another, Warden Vannoy's supervision of others was sufficient enough to impute knowledge and notice to him regarding the actions, or inactions, of others. Plaintiff cannot have it both ways.

Not only did Warden Vannoy have no personal involvement in the June 27, 2019 incident, there is no causal connection between the acts or omissions of Warden Vannoy and the asserted constitutional violation Plaintiff seeks to be redressed though this suit.[82] Consequently, the claims against Warden Vannoy should be dismissed with prejudice.

### ii. Conspiracy.

A plaintiff who asserts conspiracy claims under Section 1983 must plead operative facts upon which his claim is based.[83] However, "bald allegations that a conspiracy existed are

---

[79] R.Doc. 1, at p. 6.
[80] **Exhibit 9**: Vannoy Affidavit, ¶16.
[81] R.Doc. 1, p. 9.
[82] *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).
[83] *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

insufficient"[84] to uphold a Section 1983 claim, and such conclusory allegations fail as a matter of law.

Here, the claims against Warden Vannoy amount to no more than a claim that he should have known of a purported "excessive force cover up", and if he had known, Warden Vannoy should have corrected such a cover up by performing an in-depth investigation therein.[85] Plaintiff has not presented any facts from which a conspiracy can logically be inferred, and therefore, his claim for conspiracy must be dismissed.

Moreover, Plaintiff also asserts that "[d]ue to similarities of some drug users of the drug known as mojo, officers have developed an attitude that all cases are mojo cases and respond with violence."[86] Plaintiff has failed to allege any other incident in his Complaint where an offender was presumed to be intoxicated on "mojo," and the officers handling that situation were legally found to have used excessive force upon the offender. Warden Vannoy was not "on notice" of a repeated pattern of violations involving incidents similar to the one asserted by Plaintiff in this suit, and therefore, this claim of conspiracy to "cover up" excessive force as it relates to presumably intoxicated offenders should be dismissed with prejudice.

## C. Qualified Immunity

Defendants, Captain Sterling and Lt. Gooden,[87] are immune from damages in their individual capacities because they did not violate the Plaintiff's clearly established constitutional rights. Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

---

[84] *Id.*
[85] R.Doc. 1, pp. 6 and 9.
[86] R.Doc. 1, at p. 8.
[87] Warden Vannoy is sued only in his official capacity, and therefore, Eleventh Amendment immunity, and not qualified immunity, is applicable to the claims asserted against him.

harassment, distraction and liability when they perform their duties reasonably.[88]  The qualified immunity defense is a familiar one and operates to protect a public official who is performing a discretionary task.[89]  Government officials, performing discretionary functions, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[90] Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[91]  Actions and decisions made by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[92]

The Courts have traditionally used the two step method in determining whether a defendant is entitled to qualified immunity. The sequencing of the analysis has been left to the discretion of the district courts to determine which of the two prongs should be analyzed first.[93] The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional right.[94]  This is a "purely legal question" to be determined by the Court.[95]  The court uses currently applicable constitutional standards to make this assessment.[96]  The plaintiff bears the burden of pleading such a violation of clearly established law.[97]

---

[88] *Pearson v. Callahan*, 129 S.Ct. 808, 815-816, citing *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[89] *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).
[90] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[91] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[92] *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).
[93] *Pearson v. Callahan*, 129 S.Ct. 808 at 818, 172 L.Ed.2d 565 (2009).
[94] *Id.*
[95] *Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).
[96] *Saucier*, 121 S.Ct. at 2156.
[97] See *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985).

The second step the district court must determine is whether the right allegedly violated was clearly established at the time of the infraction.[98]  This inquiry must be undertaken in light of the specific factual context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[99]

The court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his actions would violate that right.[100]  It is not enough that the law be established as a general proposition (such as that the Fourth Amendment prohibits "unreasonable" searches and seizures or that the Eighth Amendment prohibits "excessive" force).  Rather, the right that the official is alleged to have violated must have been "clearly established" in a more particularized and more relevant sense.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right at the time.[101]  As the Supreme Court held:

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*.[102]

If the law did not put the officer on notice that his conduct in the situation he confronted would be clearly unlawful, he is entitled to qualified immunity.[103]  Officials are not expected to determine the manner in which the law's gray areas might be clarified or defined.[104]  Further, the

---

[98] *Id.*
[99] *Id.*
[100] *Anderson* v. Creighton, 107 S.Ct. 3034, 3039 (1987).
[101] *Saucier*, 121 S.Ct. at 2156.
[102] *Saucier*, 121 S.Ct. at 2156 (*emphasis added*).
[103] *Saucier*, 121 S.Ct. at 2156-57.
[104] *Davis v. Scherer*, 104 S.Ct. 3012, 3019-20 (1984).

Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law".[105]  Defendants sued in their individual capacities should be granted qualified immunity unless their actions "were patently incompetent or intentionally flouted the law."[106]

Here, Captain Sterling and Lt. Gooden are both entitled to qualified immunity because both performed their duties reasonably and responsibly, exercising fair judgment in addressing a combative, non-compliant offender who was possibly intoxicated.[107] Turning to the first prong of the qualified immunity analysis, Plaintiff cannot meet his burden in proving either Captain Sterling or Lt. Gooden violated his constitutional rights.[108]

Captain Sterling's conduct in taking Plaintiff to the ground after Offender Brooks repeatedly refused to comply with direct verbal orders to place his hands behind his back to be restrained, and per the Use of Force Policy,[109] did not violate Plaintiff's constitutional rights because the force used was both reasonable and appropriate under the circumstances. Plaintiff also cannot prove that the second time Captain Sterling took him to the ground violated his constitutional rights because Offender Brooks continued to resist both Captain Sterling and Lt. Gooden when he was being removed from his cell and during the walk to Administrative Segregation.[110] As to Lt. Gooden, his use of chemical agent was also not an unconstitutional use of force because he was trying to prevent further assault on Captain Sterling, who was inside the

---

[105] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[106] *Brady v. Fort Bend County,* 58 F.3d 173, 173 (5th Cir. 1995); *see also Shipp v. McMahon,* 234 F.3d 907, 915 (5th Cir. 2000) (noting that "courts have narrowly adjudicated issues of qualified immunity largely to the benefit of government officials," and qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").
[107] *Pearson v. Callahan*, 129 S.Ct. 808, 815-816, citing *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982); *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[108] *Id.*
[109] **Exhibit 2:** Sterling Affidavit, ¶¶9-12.
[110] **Exhibit 2:** Sterling Affidavit, ¶¶17-20; Exhibit 4: Gooden Declaration, ¶¶10-14.

cell, on the ground, with Plaintiff.[111] Not until Lt. Gooden's dispensed the minimum amount of chemical agent did Offender Brooks finally comply with the order to place his hands behind his back in order to be restrained.[112] In using this type of force, per the Use of the Force policy, Lt. Gooden utilized only the amount of force necessary to gain Plaintiff's compliance.

Thus, Plaintiff cannot prove the force used by Captain Sterling or Lt. Gooden was excessive or unnecessary to support a finding a constitutional violation such that Plaintiff's behavior indicated to both officers that Offender Brooks would not comply with their orders until such force was used. In other words, Plaintiff left them with no choice but to use force during this incident due to his defiant and dangerous behavior.

Plaintiff asks this Court to assume both Captain Sterling and Lt. Gooden had knowledge of his medical diagnosis of a seizure disorder that could somehow explain the behavior he was exhibiting on the subject date.[113] However, the Medical Investigation conducted by LSP personnel contradicts this assertion because upon a review of his medical records, there was no medical reason or medications prescribed to him that would have resulted in the physical or mental state he was exhibiting.[114] In addition, neither Captain Sterling nor Lt. Gooden had any knowledge of Plaintiff's medical history, symptoms, diagnoses, treatment, medications prescribed, medications ingested on the subject date, or any date for that matter.[115]

The question for this Court is not whether Plaintiff in fact had a seizure—the question is whether the force used by either officer was excessive as to warrant a finding of a violation of Plaintiff's constitutional rights. The answer to that question as to both officers is a resounding no.

---

[111] **Exhibit 2:** Sterling Affidavit, ¶¶15-16; **Exhibit 4:** Gooden Declaration, ¶¶6-9.
[112] *Id.*
[113] R.Doc. 1.
[114] **Exhibit 7**: Disciplinary Reports, p. 5 of 8.
[115] **Exhibit 2**: Sterling Affidavit, ¶¶28-29; **Exhibit 4**: Gooden Declaration, ¶¶20-21.

Regarding the second prong of the qualified immunity analysis, for the law to be clearly established, it must have been "beyond debate" that Defendants broke the law.[116] The "illegality" of the particular conduct in question must be undebatable.[117] In this case, it is not clearly established that Captain Sterling or Lt. Gooden's conduct was unlawful in light of the situation in which they were confronted.[118]

Captain Sterling, before arriving to Plaintiff's cell, was notified of a possible intoxication.[119] Once he arrived, he confirmed the behavior exhibited by Offender Brooks comported with his own experience of offenders under the influence of intoxicating substances.[120] Based on his knowledge and experience, Captain Sterling's priority was to restrain Plaintiff so he would not harm himself, other offenders or security staff.[121] When Offender Brooks would not comply with being restrained, Captain Sterling used only the force necessary to gain compliance.[122] However, even after this initial use of force, Offender Brooks remained combative, defiant and uncooperative—placing Captain Sterling at great risk when both were on the cell floor.[123]

Only after Lt. Gooden's use of chemical agent did Plaintiff finally comply,[124] likely preventing injury to Captain Sterling. Once both officers brought Plaintiff to his feet, Offender Brooks continued to be uncooperative and recalcitrant to their verbal orders to exit his cell and walk toward Administrative Segregation—again requiring Captain Sterling to use force to bring Plaintiff to the ground for the safety of both officers, other staff and potentially other offenders if

---

[116] *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017).
[117] *Ziglar v. Abbasi*, —— U.S. ——, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017).
[118] *Id.*
[119] **Exhibit 2**: Sterling Affidavit, ¶6.
[120] **Exhibit 2**: Sterling Affidavit, ¶¶7-8.
[121] **Exhibit 2**: Sterling Affidavit, ¶10.
[122] **Exhibit 2**: Sterling Affidavit, ¶11-13.
[123] **Exhibit 2**: Sterling Affidavit, ¶14.
[124] **Exhibit 2**: Sterling Affidavit, ¶¶15-16; **Exhibit 4:** Gooden Declaration, ¶¶6-9.

Plaintiff had been able to pull away from them, break loose, and escape their grasp during this escort.[125] The safe movement of all offenders is a priority in every correctional institutions, and even more so when it is believed an offender has ingested a substance which may have negative physical and mental side effects.

Captain Sterling and Lt. Gooden did not violate Plaintiff's constitutional rights when they used force to restrain Plaintiff in light of Plaintiff's continued defiance and willing disobedience throughout the encounter. Neither knowingly violated the law, and as such, both should be protected under the doctrine of qualified immunity.[126]

### D.  Lt. Gooden and Captain Sterling Did Not Use Excessive Force.

Plaintiff cannot support his claim of excessive force claim under the Eighth Amendment against Lt. Gooden or Captain Sterling with competent summary judgment evidence, and therefore, this Honorable Court should dismiss Plaintiff's claims with prejudice.

Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[127] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[128] "[W]henever a corrections officer stands accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

---

[125] **Exhibit 2**: Sterling Affidavit, ¶¶17-20; **Exhibit 4:** Gooden Declaration, ¶¶10-14.
[126] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[127] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[128] *Hudson*, 503 U.S. at 10.

judicial inquiry is…whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.[129]

It must be understood that a constitutional violation does not occur every time an officer touches someone.[130] In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation.[131] When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is *de minimis* for constitutional purposes.[132] The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed.[133]

The factors that are to be considered in determining whether an alleged use of force has been excessive are as follows: (1) the extent of injury sustained, if any, (2) the need for the application of force, (3) the relationship between the need for force and the amount of force utilized, (4) the threat reasonably perceived by prison officials, and (5) any efforts made to temper the severity of a forceful response.[134]  The Court must give an adequate evaluation of all of the factors.[135]

### iii.  *Hudson Factors*

#### a.  Extent of Injury Sustained.

A review of Plaintiff's medical records indicate that Plaintiff suffered some injury to the right side of his face and to his left knee.[136] Plaintiff was initially evaluated and treated at LSP, and then treated at University Medical Center the following day on June 28, 2019.[137] Plaintiff's

---

[129] *Hudson*, 503 U.S. at  7.
[130] *Ikerd v. Blair*, 101 F.3d 430, 434 (C.A. 5 (La.), 1996) (quoting *Hudson*, 503 U.S. at 9).
[131] *Ikerd,* 101 F.3d at 434.
[132] *Id*.
[133] *Id.*
[134] *Hudson*, 503 U.S. at 7.
[135] *Martin v. Seal*, 510 F. App'x 309, 316–17 (5th Cir. 2013).
[136] **Exhibit 5:** Medical Records.
[137] *Id*.

left knee was x-rayed and no fracture or dislocation was found[138] and the physical exam noted "[h]ealing 1 cm laceration over the left knee."[139] Bactroban was applied to Plaintiff's knee.[140]

Additionally, head and maxillofacial CTs were performed, resulting in a finding of a "chronic appearing right zygomatic arch, right nasal bone and right inferior orbital wall fractures, left lamina papyracea. The age is unknown. No adjacent soft tissue swelling is observed. No definite acute bone injury is identified. No significant soft tissue abnormality is identified."[141] A "chronic appearing" fracture is one that has "failed to heal for more than 12 months"[142]

Plaintiff's physical exam noted "small healing lacerations noted above left eye and forehead. Tenderness to palpitation over right zygoma with mild edema, but no warmth, acehymesis, or erythema noted."[143] It was also highlighted that "Per medical records from jail, he has tenderness over his right zygoma. It is possible that these fractures are remote." In other words, the radiologist and examining physician questioned the acuteness of Plaintiff's facial injuries as it related to the incident occurring the day before, and surmised that the facial fractures could be from older injuries.

Upon a review of Plaintiff's medical records, Plaintiff had prior injuries to the right side of his face. Notably, on September 12, 2018, Plaintiff suffered three (3) lacerations to his right eye when he fell while lifting weights.[144] Then on March 18, 2019, approximately three months before the subject incident, Plaintiff's right eye was blackened from a fight he was in, but "refused to be assessed" by medical personnel.[145] Thus, it is possible that Plaintiff suffered facial bone fractures

---

[138] **Exhibit 5:** Medical Records, p. 11.
[139] **Exhibit 5:** Medical Records, p. 14.
[140] **Exhibit 5:** Medical Records, p. 15.
[141] **Exhibit 5:** Medical Records, p. 10.
[142] https://www.sciencedirect.com/science/article/pii/S0020138315003010 (visited October 19, 2021).
[143] **Exhibit 5:** Medical Records, p. 14.
[144] **Exhibit 10**: Medical Records of Offender Brooks dated September 12, 2018 ("9/12/18 Medical Records").
[145] **Exhibit 11**: Medical Records of Offender Brooks dated March 20, 2019 ("3/20/19 Medical Records").

not from the subject incident, but from prior incidents that either went undiagnosed due to his refusal to accept medical treatment or were not severe enough to warrant a radiological exam at the time of the injury.

The possibility that Plaintiff's facial fracture were likely caused by previous accidents or altercations results in this factor favoring Defendants such that Plaintiff did not suffer any injury greater than *de minimus*. Nevertheless, even if Plaintiff's facial bone fractures were a result of the subject incident, both Captain Sterling and Lt. Gooden used only the amount of force necessary and proportional to the actions of Offender Brooks, discussed in more detail below.

### b.  Need for Application of Force.

In this case, there are three (3) instances of force—two involving Captain Sterling bringing Plaintiff to the ground and one involving Lt. Gooden's use of chemical agent.

As to Captain Sterling's first use of force, he was forced to bring Plaintiff to the ground because Offender Brooks refused to comply with two (2) direct orders: (1) to put his hands behind his back and submit to being restrained while Captain Sterling was outside the cell,[146] and (2) again refusing to submit to being strained after Captain Sterling entered the cell, after which Offender Brooks became aggressive and pulled away.[147] This situation posed a great risk to Captain Sterling such that he was in a confined space with Plaintiff, whom he believed was intoxicated due to Plaintiff's behavior of slurred speech and red/glassy eyes. Moreover, Captain Sterling's experience, offenders exhibiting signs of red and/or glassy eyes, vomiting, and slurred speech are indications of intoxication.[148]  In some instances, and depending on the substance ingested by an

---

[146] **Exhibit 2**: Sterling Affidavit, ¶9.
[147] **Exhibit 2:** Sterling Affidavit, ¶11.
[148] **Exhibit 2**: Sterling Affidavit, ¶8.

intoxicated offender, the strength of said offender is exponentially increased, creating a dangerous situation for officers and the offender.[149]

As instructed by the applicable Use of Force policy, Captain Sterling brought Plaintiff to the ground by sweeping his legs out from underneath him to gain control over an offender who is combative.[150] Nevertheless, Offender Brooks continued to resist and fight Captain Sterling, creating a dangerous situation for both individuals as they were on the ground, in a confined space, which restricted Captain Sterling's movements and his ability to effectively and safely restrain Plaintiff and compounded the threat to Captain Sterling. Not until Lt. Gooden used chemical agent did Offender Brooks comply, putting his hands behind his back and was finally restrained.

Therefore, it was not only appropriate and necessary for Captain Sterling to use force in this instance, but it was indeed imperative that he bring Plaintiff to the ground as Offender Brooks posed a substantial risk to Captain Sterling and to himself as he was exhibiting behaviors of someone under the influence of intoxicating substances. The Use of Force Policy at LSP allows such a maneuver in these types of situations.[151]

Lt. Gooden came upon the subject incident when Captain Sterling was on the ground with Offender Brooks inside the cell, with Offender Brooks actively resisting Captain Sterling.[152] In order to prevent further assault on Captain Sterling, Lt. Gooden administered 6 grams of chemical agent, after which Offender Brooks complied with direct orders to place his hands behind his back to be restrained, still while on the floor of the cell.[153] Thus, Lt. Gooden's use of force was necessary in light of the fact that Offender Brooks was actively resisting Captain Sterling *until* Lt. Gooden

---

[149] **Exhibit 2**: Sterling Affidavit, ¶8.
[150] **Exhibit 2**: Sterling Affidavit, ¶¶12, 13.
[151] **Exhibit 3**: Use of Force Policy, at p. 3 "Force Continuum", p. 4 "Necessary Force" and "Reasonable Force", pp. 5 – 6 at section A(3)(b)(2), (3), and (6).
[152] **Exhibit 4**: Gooden Declaration, ¶6.
[153] **Exhibit 4**: Gooden Declaration, ¶¶7-9.

dispensed chemical agent. Moreover, he used only the minimum amount of chemical agent to bring Offender Brooks in compliance with his orders and the Use of Force Policy allows the use of chemical agent to regain control of the institution.[154] Consequently, there was an urgent need for Lt. Gooden to use force to bring Plaintiff back into compliance and for the safety of Captain Sterling.

The third instance of use of force occurred after Offender Brooks was brought to his feet inside his cell and continued to resist Captain Sterling, requiring additional assistance from Lt. Gooden to remove Plaintiff from his cell.[155] Once removed from the cell, both Captain Sterling and Lt. Gooden were escorting Offender Brooks out of CBA to Cell Block "B" Administrative Segregation.[156] Yet, Offender Brooks continued to be combative and resist both officers during this walk.[157]

This created yet another situation that posed a significant danger to both officers and Offender Brooks because he continued to resist them. At this time, Captain Sterling brought Offender Brooks to the ground per the applicable Use of Force Policy that allows for taking an offender to the ground in such circumstances so that Plaintiff could not break free and potentially hurt himself or others in an open area without proper confinement.[158]

c.  Relationship Between Need and Amount of Force Utilized.

The amount of force used by Captain Sterling in taking of Offender Brooks to the ground on two (2) occasions was both appropriate and proportional to Plaintiff's ongoing combative behavior. Captain Sterling first brought Plaintiff to the ground when Offender Brooks was in his

---

[154] **Exhibit 3**: Use of Force Policy, p. 9, Section C(1)(c).
[155] **Exhibit 2**: Sterling Affidavit, ¶17; **Exhibit 4**: Gooden Declaration, ¶10.
[156] **Exhibit 2**: Sterling Affidavit, ¶18; **Exhibit 4**: Gooden Declaration, ¶11.
[157] *Id*.
[158] **Exhibit 3**: Use of Force Policy, at p. 3 "Force Continuum", p. 4 "Necessary Force" and "Reasonable Force", pp. 5 – 6 at section A(3)(b)(2), (3), and (6).

cell, became aggressive, and would not comply with direct orders to place his hands behind his back to be restrained.[159] It was important to bring Plaintiff to the ground because in that position, it is easier to regain control of a combative offender.[160] Once on the ground, Offender Brooks continued to resist and fight against Captain Sterling.[161]

As Lt. Gooden came upon this scene, both Offender Brooks and Captain Sterling were on the ground with Plaintiff actively resisting Captain Sterling. Thus, the amount of force used by Lt. Gooden in dispensing the minimum amount of chemical agent upon Offender Brooks to bring him compliance was appropriate and proportional. This is evidenced by the fact that Offender Brooks finally complied with the multiple direct orders to place his hands behind his back to be handcuffed.[162]

Lastly, Captain Sterling's second use of force was also appropriate and proportional such that Offender Brooks continued to resist both Captain Sterling and Lt. Gooden as they were taking Plaintiff out of his cell, and during his walk to Cell Block "B" Administrative Segregation.[163] Captain Sterling was forced to again bring Offender Brooks to the floor to regain control of the situation so that Offender Brooks would not harm himself, other offenders or security staff.[164] Only after Plaintiff was taken to the ground during this walk did he comply with the officers' orders and control was regained to bring him to Administrative Segregation.[165] Therefore, Captain Sterling and Lt. Gooden used only the minimum amount of force necessary to get Plaintiff into compliance because Offender Brooks continued to disregard the verbal orders given to him. Not until the minimum amount of force was utilized did Plaintiff comply.

---

[159] **Exhibit 2**: Sterling Affidavit, ¶¶7-12.
[160] **Exhibit 2**: Sterling Affidavit, ¶13.
[161] **Exhibit 2**: Sterling Affidavit, ¶14.
[162] **Exhibit 2**: Sterling Affidavit, ¶¶15-16; **Exhibit 4**: Gooden Declaration, ¶9.
[163] **Exhibit 2**: Sterling Affidavit, ¶¶17-20; **Exhibit 4**: Gooden Declaration, ¶¶10-14.
[164] **Exhibit 2**: Sterling Affidavit, ¶¶19-20; **Exhibit 4**: Gooden Declaration, ¶¶12-13.
[165] **Exhibit 2**: Sterling Affidavit, ¶¶19-20; **Exhibit 4**: Gooden Declaration, ¶¶12-14.

Neither Captain Sterling nor Lt. Gooden hit, punched, kicked, struck, stomped or beat Plaintiff at any time,[166] as Plaintiff alleges. Both used only the minimum amount of force necessary to regain control, restore discipline, and get Offender Brooks back into compliance and to follow institutional rules.[167]

d.   Threat Reasonably Perceived by Prison Officials.

The threat perceived by Captain Sterling and Lt. Gooden was real, substantial, and needed to be urgently addressed. Captain Sterling was informed by Cadet James Cook that Offender Brooks was possibly intoxicated,[168] and therefore, Captain Sterling arrived at Plaintiff's cell with that information at the top of his mind. Once he arrived to Plaintiff's cell, he witnessed Offender Brooks standing at the front of the cell, covered in vomit, his eyes were red and glassy, and he appeared to be intoxicated.[169]

Captain Sterling has encountered intoxicated offenders before this incident, and in his experience, the possibility that Offender Brooks was in fact under the influence of intoxicating substances posed a serious risk to the officers and to the Plaintiff.[170] Offenders exhibiting signs of red and/or glassy eyes, vomiting, and slurred speech are indications of intoxication and in some instances, depending on the substance ingested by an intoxicated offender, the strength of said offender is exponentially increased, creating a dangerous situation for officers and the offender.[171]

Here, Captain Sterling's first priority was to restrain Offender Brooks so that he could not cause harm to himself or others. However, Plaintiff flatly refused Captain Sterling's direct orders to put his hands behind his back while the cell door was open.[172] In failing to do so, the possibility

---

[166] **Exhibit 2**: Sterling Affidavit, ¶¶30-35; **Exhibit 4:** Gooden Declaration, ¶¶22-27.
[167] *Hudson*, 503 U.S. at 7.
[168] **Exhibit 2**: Sterling Affidavit, ¶6.
[169] **Exhibit 2**: Sterling Affidavit, ¶7.
[170] **Exhibit 2**: Sterling Affidavit, ¶8.
[171] **Exhibit 2**: Sterling Affidavit, ¶8.
[172] **Exhibit 2**: Sterling Affidavit, ¶9.

of Offender Brooks exiting the cell into the hallway unrestrained would have created an even more dangerous situation. Therefore, the threat to safety and security perceived by Captain Sterling warranted the use of force in this instance.

Next, the threat perceived by Lt. Gooden upon arriving at Plaintiff's cell was even more dire. Lt. Gooden observed Captain Sterling on the ground, with the Plaintiff, inside the cell, and Offender Brooks was actively resisting Captain Sterling's efforts to restrain him. The added danger of Plaintiff being possibly intoxicated increased the potential harm he could cause himself or Captain Sterling. Therefore, Lt. Gooden's use of chemical agent in this instance was used to combat a real and serious threat to Captain Sterling, and to himself. Only after dispensing chemical agent did Offender Brooks submit to being restrained.

### e. Efforts Made to Temper Forceful Response.

Many efforts were made by Captain Sterling and Lt. Gooden to gain control of Offender Brooks before using force. Captain Sterling continued to give verbal orders to Plaintiff to place his hands behind his back to be restrained. When he failed to do so, Captain Sterling brought Plaintiff to the ground per the applicable Use of Force Policy. Even after bringing Plaintiff to the ground, he continued to resist Captain Sterling. Not until Lt. Gooden dispensed chemical agent did Offender Brooks comply with the many verbal orders given.

What is more, Offender Brooks continued to resist both Captain Sterling and Lt. Gooden when they were bringing him out of the cell and during the walk to Administrative Segregation. This continued and consistent defiance caused Captain Sterling to gain bring Offender Brooks to the ground per the Use of Force Policy for a second time. At every stage of this encounter, Offender Brooks could have harmed the officers or himself, with the added danger of Plaintiff possibly

being intoxicated and the potential side effects of the unknown substance the officers believed he

had ingested.

## IV.    CONCLUSION

As shown by the attached exhibits and referenced law, this Honorable Court should dismiss

Plaintiff's claims against all Defendants because (1) Defendants are entitled to Eleventh

Amendment, (2) both Captain Sterling and Lt. Gooden are entitled to qualified immunity, and (3)

neither Captain Sterling nor Lt. Gooden used excessive force on Plaintiff. As such, this Court

should dismiss Plaintiff's claims against Defendants with prejudice, and at Plaintiff's sole cost.

Respectfully submitted,

**JEFF LANDRY
ATTORNEY GENERAL**

BY:    */s/ Rachel P. Dunaway*
Rachel P. Dunaway (37104)
Assistant Attorney General
**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, Fourth Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone: 225-326-6406
Facsimile: 225-326-6495
E-mail:  DunawayR@ag.louisiana.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 22nd day of October 2021, undersigned filed the
foregoing electronically with the Clerk of Court by using the CM/ECF system and provided same
to *pro se* inmate plaintiff via U.S. First Class Mail, to the below name and address:

***Pro Se Plaintiff***
Ray Brooks (DOC# 568449)
Louisiana State Penitentiary
Angola, LA 70712

*/s/Rachel P. Dunaway*
**RACHEL P. DUNAWAY
Assistant Attorney General**