UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RAY BROOKS (DOC # 568449)** | : | **CIVIL ACTION** |
| | : | **NO. 19-846-SDD-RLB** |
| **VERSUS** | | |
| | : | **JUDGE SHELLEY D. DICK** |
| **DARREL VANNOY, ET AL.** | : | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATE OF LOUISIANA**

**PARISH OF WEST FELICIANA**

### AFFIDAVIT

**BEFORE ME,** the undersigned, came and appeared:

### THOMAS STERLING

Who, under the penalty of perjury, after being sworn did depose and state:

1.

I am employed by the Louisiana Department of Public Safety and Corrections in the position of Captain at Louisiana State Penitentiary, Angola, Louisiana.

2.

At all times relevant to this suit, I held the rank of Captain at Louisiana State Penitentiary.

3.

On June 27, 2019, I was assigned to the position of Captain of the Main Prison West Yard where Cellblock A ("CBA") is located.

4.

On June 27, 2019 at approximately 2:00 p.m., I was notified by Control Center via radio of a beeper activation on CBA Lower.

**EXHIBIT 2**

5.

I immediately activated my body camera and proceeded to CBA Lower.

6.

Upon my arrival at CBA lower, Cadet James Cook informed me that offender Ray Brooks, (DOC #568449) was possibly intoxicated.

7.

I entered CBA Lower Left Cell #9, which cell door was open and Offender Brooks was standing near the front of his cell, covered in vomit, his eyes were red and glassy, and appeared to be intoxicated.

8.

In my experience, offenders exhibiting signs of red and/or glassy eyes, vomiting, and slurred speech are indications of intoxication. In some instances, and depending on the substance ingested by an intoxicated offender, the strength of said offender is exponentially increased, creating a dangerous situation for officers and the offender.

9.

I issued a direct verbal order to Offender Brooks to put his hands behind his back and submit to being restrained. Offender Brooks flatly refused my orders.

10.

In responding to this situation, it was important to get Offender Brooks restrained and under control so that Offender Brooks would not harm himself, other offenders or security staff.

11.

I then entered the cell and attempted to restrain Offender Brooks. Offender Brooks suddenly became aggressive and pulled away from me, refusing to comply with my orders.

12.

At that time, I was forced to take Offender Brooks to the ground by sweeping his legs out from beneath him per the applicable Use of Force policy.

13.

It was important to bring Offender Brooks to the ground because in that position, it is easier to regain control of a combative offender.

14.

However, once on the ground, Offender Brooks continued to resist and fight against me.

15.

Around this time, Lt. Charles Gooden arrived at the cell and administered the minimum amount of chemical agent to assist in gaining control of Offender Brooks.

16.

I was then able to place Offender Brooks in handcuffs behind his back and Offender Brooks was brought to his feet.

17.

Once restrained and brought to his feet, Offender Brooks continued to resist me, requiring additional assistance from Lt. Gooden to remove Offender Brooks from his cell.

18.

Once removed from his cell, Lt. Gooden and I began escorting Offender Brooks out of CBA to Cell Block "B" Administrative Segregation. However, Offender Brooks continued to be combative and resist us during the walk.

19.

I then regained control of the situation by taking Offender Brooks to the ground a second time per the applicable Use of Force policy.

20.

I, with the assistance of Lt. Gooden, was able to gain compliance of Offender Brooks and regain control of the situation after which Offender Brooks was again brought to his feet.

21.

Since chemical agent was used on Offender Brooks, Medical #4 was notified of the need for an ambulance at Cellblock B.

22.

Offender Brooks was transported to the Treatment Center for treatment and evaluation.

23.

I reported to the Robert E. Barrow Treatment Center for a medical evaluation after this incident.

24.

I was later cleared by medical personnel to return to my post and complete my tour of duty.

25.

After the incident was over, I attempted to review the body camera footage and found that the body camera failed to record any of the incident.

26.

I notified Assistant Warden Darian Thompson of this incident.

27.

I authored a Warden's Unusual Occurrence Report and Disciplinary Report as a result of this incident.

28.

I have no information regarding Offender Brooks' medical history, symptoms, and/or diagnoses.

29.

I am not aware of any treatment Offender Brooks has sought or received during his incarceration at Louisiana State Penitentiary, whether Offender Brooks has ever received a diagnosis as a result of any such treatment, whether Offender Brooks has ever been prescribed medication at any time, or whether Offender Brooks has ever received, accepted, or ingested any medications on the day of the subject incident, or at any time.

30.

I did not hit, kick, punch, strike, stomp, or beat Offender Brooks in any way, form, or fashion.

31.

I did not witness Lt. Gooden hit, kick, punch, strike, stomp, or beat Offender Brooks in any way, form, or fashion.

32.

At no time did I use excessive or unnecessary force on Offender Brooks.

33.

I did not see Lt. Gooden use excessive or unnecessary force on Offender Brooks.

34.

I followed the Use of Force policy in place at Louisiana State Penitentiary and the training that I received in handling the incident.

35.

Any claim that I used excessive force or witnessed excessive force be used on Offender Brooks in any way, form, or fashion is false.

The above is true and correct to the best of my personal knowledge and belief.

_____
THOMAS STERLING

**SWORN TO AND SUBSCRIBED** before me on this __19__ day of __October__, 2021 at Angola, Louisiana.

_____C McCann #77912_____
Ex-Officio **NOTARY PUBLIC**