## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAY BROOKS (#568449)** | **CIVIL ACTION** |
| **VERSUS** | |
| **DARREL VANNOY, ET AL.** | **19-846-SDD-RLB** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 22, 2022.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RAY BROOKS (#568449)                                              CIVIL ACTION

VERSUS

                                                                  19-846-SDD-RLB

DARREL VANNOY, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion for Summary Judgment filed on behalf of defendants Darrel Vannoy, Thomas Sterling, and Charles Gooden (R. Doc. 59). Plaintiff filed two sworn statements in opposition to the Motion (R. Docs. 55 and 67). In addition, the plaintiff's Complaint (R. Doc. 1) is verified.

The *pro se* plaintiff, an inmate confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against defendants Vannoy, Sterling and Gooden complaining that his constitutional rights were violated due to the use of excessive force. He seeks monetary and injunctive relief.

Defendant moves for summary judgment relying upon the pleadings; a Statement of Uncontested Material Facts; the Inmate Location Sheet of Offender Brooks, the Affidavit of Captain Thomas Sterling, LSP Directive No. 09.002- Use of Force, Unsworn Declaration of Charles Goode, Jr., excerpts of the plaintiff's medical records, Administrative Remedy Procedure No. LSP-2019-1454, Disciplinary Reports regarding June 27, 2019, LSP Directive No. 14.006 – Administrative Remedy Procedure, and the Affidavit of Darrel Vannoy.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Verified Complaint, the plaintiff alleges the following: On June 27, 2019, the plaintiff was having a seizure in the hallway of the CBA lower left tier. As he began to recover,

he became aware of someone beating him and instinctively attempted to cover himself from the blows. The plaintiff was then shackled and dragged outside by the shackles. A bone was broken in the right side of his face, and he was in pain for a period of time.[1]

The only officers present, that the plaintiff can recall, are defendants Sterling and Gooden. Defendant Sterling responded to an activated beeper alert as security assumed the plaintiff was intoxicated. He along with defendant Gooden physically attacked the plaintiff. Defendant Vannoy was aware that officers often use excessive force and that EMT's downplay the inmates' injuries to cover up the wrongdoing.

Defendants first seek dismissal of the plaintiff's claims against them in their official capacity on jurisdictional grounds. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against the defendants in their official capacity, for monetary damages, are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for

---

[1] The plaintiff identified his injuries with more specificity in his Opposition (R. Doc. 55). Therein, the plaintiff states that he suffered a left knee injury, and three fractures in his face which required surgical repair.

actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

With regards to the plaintiff's claims against defendant Vannoy in his individual capacity, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

The plaintiff alleges that due to the grievance procedure at the prison, defendant Vannoy knew or should have known of the numerous grievances filed regarding the use of excessive force because all grievances are initially received in his office. The plaintiff further alleges that defendant Vannoy supervised the wardens but took a hands-off approach to the day to day

running of the institution. Defendant Vannoy did nothing to abate the excessive use of force on inmates, and the submission of false reports or medical records to cover up the violation.

The plaintiff's assertion that defendant Vannoy should have known of the numerous grievances filed regarding the use of excessive force is speculative. The first step of the grievance procedure is initiated by an inmate sending a letter to the Warden's Office. The grievance is screened by an ARP Screening Officer, a staff member conducts an investigation, and a response is delivered to the inmate. *See Affidavit of Vannoy*, R. Doc. 59-12. As such defendant Vannoy had little to no involvement in the receipt and processing of grievances.

The plaintiff's assertion that defendant Vannoy had knowledge of the use of excessive force and the submission of false documents is also speculative. As the former Warden at LSP, defendant Vannoy delegated specific responsibilities and duties to various officers who then prepared their own reports and findings. As such, defendant Vannoy would not have been aware of any falsified documents and denies knowledge of the same. *See Affidavit of Vannoy*, R. Doc. 59-12. Accordingly, there is no basis for the plaintiff's speculative allegations in the record and defendant Vannoy is entitled to summary judgment in his favor.

With regards to the plaintiff's claims against defendants Sterling and Gooden in their individual capacities, the moving defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly

violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be denied in part. An issue of material fact requiring a credibility determination exists as to whether the use of force was excessive.

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may

be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The summary judgment evidence submitted by the defendants shows that, on June 27, 2019, defendant Sterling was notified of a beeper activation on the CBA lower. He activated his body camera and proceeded to the area. Upon arrival, defendant Sterling was informed by Cadet Cook that the plaintiff was possibly intoxicated.

Defendant Sterling found the plaintiff standing near his open cell. He was covered in vomit, his eyes were red and glassy, and he appeared to be intoxicated based on Sterling's experience. Sterling ordered the plaintiff to put his hands behind his back and submit to being restrained, but the plaintiff refused. He then entered the plaintiff's cell and attempted to restrain the plaintiff. The plaintiff became aggressive, pulled away, and refused to comply with orders. Sterling then took the plaintiff to the ground by sweeping his legs from beneath him.

Once on the ground the plaintiff continued to resist and fight. Defendant Gooden arrived while Sterling and the plaintiff were on the ground in the plaintiff's cell, and the plaintiff was actively resisting. Gooden and administered a minimum amount of chemical agent to assist in gaining control of the plaintiff. The plaintiff was then restrained and brought to his feet. He continued to resist, and Gooden assisted Sterling in removing the plaintiff from his cell. As the plaintiff was being walked to administrative segregation, he continued to resist and be combative. He was taken to the ground a second time. With the assistance of Gooden, Sterling was able to regain control of the plaintiff and bring him to his feet.

The plaintiff was transported to the Treatment Center for treatment and evaluation. Sterling had no knowledge of the plaintiff's medical conditions or history. Sterling's body camera failed to record any part of the foregoing incident. *See Affidavit of Sterling* and *Declaration of Gooden*, R. Docs. 59-5 and 59-7.

Under penalty of perjury,[2] the plaintiff asserts he has a documented history of seizure disorders for which Dilantin and Keppra are administered to him daily. The plaintiff's duty status also documents the plaintiff's seizure disorder and limits his duties and sleeping/housing arrangements for his own safety and the safety of others. A copy of the plaintiff's duty status would have been available in his housing area. On June 27, 2019, the plaintiff suffered a seizure in the hallway of the CBA lower left tier. The plaintiff did not become aware that he was seizing until he regained consciousness to find that he was handcuffed, had been maced, and was face down on the floor being attacked by defendant Sterling. Defendant Sterling was punching the right side of the plaintiff's face. Due to the seizure, the plaintiff was unable to comprehend or respond to the defendants' orders to be restrained.

The plaintiff's cell door would not have been open since he is a maximum-security prisoner, and since his time began at LSP the plaintiff has never been asked to submit to be restrained after an officer has opened the cell door. The plaintiff has always been ordered to approach the bars to be restrained. The plaintiff additionally recalls being dragged by his shackles by defendants Sterling and Gooden.

---

[2] The plaintiff's Complaint (R. Doc. 1) is verified. The verified Complaint is competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346. The plaintiff's Complaint contains the required averral and meets the affidavit requirements. As do the two declarations submitted by plaintiff in opposition to the Motion for Summary Judgment. *See* R. Docs. 55-1 and 67.

Prior to the administration of force, the defendants did not refer to the medical/mental health intervention list. There was no need for the use of force since the plaintiff was suffering from a medical emergency. It is a widespread custom for security officers at LSP to assume an inmate is intoxicated and use force, without first consulting medical personnel to rule out medical emergencies. Additionally, Dr. Lavespere's attestation that the plaintiff does not suffer from any medical condition that would mimic signs of intoxication is clearly false.

In *Nagle v. Warden,* 2009 WL 5216865 (D.N.H Dec. 30, 2009) prison guards were presented with similar circumstance – responding to a seizure-like episode. Nagle had a history of panic attacks and an anxiety disorder that can cause such episodes. During these episodes he would lose control over his body, pull at his clothing, and would react in a violent manner when touched. Two months after becoming an inmate at the New Hampshire State Prison the plaintiff suffered one of these seizure-like episodes. His cellmate flagged down security who placed blankets under Nagle's head to protect him from injury while lying on the floor. Within a few minutes Nagle was able to move from the floor to his bed.

When a nurse attempted to take Nagle's pulse, he became combative, flailing his arms and almost hitting her. A guard stepped in front of the nurse and Nagle hit him in the stomach. Nagle was then taken to the floor for safety reasons. The guards guided Nagle down to the floor in a controlled manner, facedown at first and then turning him over onto his back. Nagle was held down on a mattress that had been placed on the floor by another guard.

After a brief reprieve, Nagle started to seize again. The guards stopped holding him down, stood back, and let the episode run its course. Upon regaining consciousness, Nagle asked what had happened and whether he was in trouble. The guards told him about his combative behavior but assured him that he would not be punished for it. Nagle received medical treatment

from the nurse and then fell asleep. Three days later, he received additional treatment for a bump on his forehead.

The Court in *Nagle* concluded, "Here, the summary judgment record shows that the defendants made a good-faith effort to respond to Nagle's seizure-like episodes. All witnesses on record have indicated that Nagle behaved in a combative manner during the June 2008 episode, nearly hitting a nurse and then actually hitting a guard, and that the guards used only as much force as necessary to prevent Nagle from harming himself or others. According to the nurse, the guards appeared genuinely concerned for Nagle's well-being and took extraordinary care in restraining him. The guards confirmed that they were indeed concerned and trying to help Nagle. They tempered the severity of their force by putting blankets and then a mattress under him."

Unlike *Nagle,* the record before the Court in the instant matter is not so clear. There are genuine issues, that largely rely on the credibility of the parties and witnesses, regarding the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. Reviewing the facts and inferences in the light most favorable to the plaintiff as the non-moving party, it would appear that a response like the one in *Nagle* would have been appropriate under the circumstances. That is not, however, the verified allegations made by the plaintiff.

The Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes at this time. As such, the defendants' Motion for Summary Judgment should be denied in this regard.

**RECOMMENDATION**

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 59), be granted in part, dismissing the plaintiff's claims for monetary damages asserted against defendants Sterling and Gooden in their official capacities and the entirety of the plaintiff's claims against defendant Vannoy, with prejudice. It is further recommended that the Motion (R. Doc. 59) be denied in all other regards, and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on February 22, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**